UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-779-FDW-DCK

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RAYFORD J. WATERS, III, INDIVIDUALLY, and d/b/a MCBONIE'S SOUTHERN FOODS BAR & GRILL; and MCBONIE'S SOUTHERN FOOD BAR AND GRILL, INC., a business entity d/b/a MCBONIE's SOUTHERN FOODS BAR & GRILL, <br><br> Defendants. | ORDER AND DEFAULT JUDGMENT |

THIS MATTER is before the Court on Plaintiff J & J Sports Productions, Inc.'s, ("Plaintiff") Motion for Default Judgment (Doc. No. 8). For the reasons set fourth below, Plaintiff's Motion is GRANTED.

## BACKGROUND

Plaintiff filed suit against Defendants Rayford Jay Waters, III, individually and d/b/a McBonie's Southern Foods Bar & Grill, and McBonie's Southern Foods Bar & Grill, Inc., d/b/a McBonie's Southern Foods Bar & Grill (collectively, "Defendants") on November 20, 2012. (Doc. No. 1). Waters is the registered agent for McBonie's Southern Foods Bar & Grill. Plaintiff alleges that it was granted exclusive nationwide commercial distribution rights to *"Star Power": Floyd Mayweather, Jr. v. Victor Ortiz Championship Fight Program*, telecast nationwide on September 17, 2011, (including all under-card bouts and fight commentary

1

encompassed in the television broadcast of the event, hereinafter referred to as the "Program"). (Doc. No. 1, p. 3). Plaintiff alleges that Defendants knew the Program was not to be intercepted, received, and exhibited without authorization from Plaintiff. (Id., p. 4). Nevertheless, Defendants displayed the Program without authorization.

These allegations are supported in an affidavit from a private investigator detailing the activities in McBonie's Bar and Grill (the "Establishment"). (Doc. No. 8). The investigation revealed that the Establishment contained 40 patrons and seven televisions displaying the Program. Plaintiff further alleges that Defendants' unauthorized exhibition was done willfully and for purposes of direct or indirect commercial advantage or private financial gain. (Doc. No. 1). Plaintiff also alleges that, by these same acts, Defendants "tort[i]ously obtained possession of the Program and wrongfully converted it to [their] own use and benefit." (Id., p. 6). Plaintiff claims that these acts were "willful, malicious, and intentionally designed to harm Plaintiff, and to subject Plaintiff to economic distress. (Id.)

Plaintiff served Defendants with the Summons and Complaint in this action on December 20, 2012. (Doc. No. 4). Defendants had until January 10, 2013, to answer or otherwise respond. See Fed. R. Civ. P. 12(a)(1)(A)(i). Defendants failed to respond within this time, and Plaintiff subsequently moved for entry for default judgment on February 14, 2013. (Doc. No. 6). The clerk entered the default against Defendants on February 15, 2013. (Doc. No. 7). Plaintiff then moved for Default Judgment on March 29, 2013. (Doc. No. 8). Defendants have not responded, and the time for doing so has expired. Fed. R. Civ. P. 12(a)(4).

## LEGAL STANDARD

The award of default judgment is governed by Rule 55 of the Federal Rules of Civil

Procedure, which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); see also Fed. R. Civ. P. 8(b)(6) ("An allegation-other than one relating to the amount of damages-is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law, and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09–cv–122–F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) (a "'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law'") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

3

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780-81; Gaines, 635 F. Supp. 2d at 416-17). The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See E.E.O.C. v. North Am. Land Corp., No. 1:08–cv–501, 2010 WL 2723727, at *2 (W.D.N.C. Jul.8, 2010).

## ANALYSIS

As discussed above, Plaintiff alleges that Defendants intercepted the Program willfully and for purposes of direct or indirect commercial advantage or private financial gain. To support these allegations, Plaintiff hired a private investigator to conduct an investigation of the Establishment. This investigation uncovered seven televisions displaying the Program and numerous patrons within the Establishment. The facts in the Complaint are deemed admitted by Defendants' failure to respond. Ryan, 253 F.3d at 780.

Furthermore, the Court takes judicial notice that this is the fourth time Plaintiff has filed

4

complaint against Defendants for similar, if not identical, conduct. See J & J Sports Prods., Inc. v. Waters, No. 3:12-cv-00267, 2012 WL 5930167 at, * 4 (W.D.N.C. Nov., 27, 2012) (hereinafter "Waters I"); J & J Sports Prods., Inc. v. Waters, No. 3:10-cv-00614 (hereinafter "Waters II"); J & J Sports Prods., Inc. v. Waters, Case No. 3:11-cv-00552 (hereinafter "Waters III"). Accordingly, the Court holds that Defendants violated 47 U.S.C. § 553 and 605. Plaintiff is entitled to an award of damages as a result, and this Court has the discretion to award damages as it considers just. See 47 U.S.C. § 605(e)(3)(c)(i)(II).

### A. Statutory Damages under 47 U.S.C § 605(e)(3)(c)(i)(II)

Plaintiff seeks the maximum statutory damages under both 47 U.S.C. § 553(3)(B) and 47 U.S.C. § 605(e)(3)(c)(i)(II). Plaintiff may not recover a default judgment that "differ[s] in kind, or exceed[s] in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); Eddins v. Medlar, Nos. 87–2602, 89–2910, 1989 WL 87630, at *3 (4th Cir. July 21, 1989). Plaintiffs, however, may not recover under both Sections 553 and 605. Integrated Sports Media, Inc. v. Buruca Brother's Va., Inc., No. 1:11–cv–839, 2011 WL 5873078, at *5 (E.D. Va. Nov. 1, 2011) (citing Kingvision Pay–Per–View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1184 (D. Co. 2008)); Time Warner Cable of New York City v. Sanchez, No. 02 Civ. 5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003). Generally, when a plaintiff seeks recovery under both sections, courts evaluate their claims under Section 605 because it provides for higher potential recovery. Buruca Brother's, 2011 WL 5873078, at *5 (when a party is unclear when seeking damages under Section 605 or Section 553, Section 605 is applied due to the higher potential recovery); see also 47 U.S.C. §§ 553(3)(B) & 605(e)(3)(C)(ii). Furthermore, Plaintiff may not recover conversion damages in addition to actual or statutory damages under Section 605. See Joe Hand

5

Promotions, Inc. v. Dock Street Enters., Inc., No. 11–1973, 2011 WL 6141058, at *5 n. 5 (D. Md. Dec. 8, 2011); J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc., No. 9–3141, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010).

For violations of Section 605, courts generally employ two approaches to determine the precise amount of statutory damages: (1) calculating the amount based on the number of patrons in the establishment during the broadcast or the price of the licensing fee based on the maximum occupancy of the establishment; or (2) a flat damage amount applied as the court sees just. Buruca Brother's, 2011 WL 5873078, at *5; see also 47 U.S.C. § 605(e)(C)(i)(II).

Here, Plaintiff asks this Court to apply a flat damage amount of $10,000, which is the maximum recovery for statutory damages. In determining what amount is appropriate, the Fourth Circuit weighs several factors, referred to as the "Nalley factors," which include: (1) the severity of the violation; (2) the degree of harm to the plaintiff; (3) the relevant financial burdens of the parties; and (4) the purpose to be served by imposing statutory damages. DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 330 n. 8 (4th Cir. 1995) (citing Nalley v. Nalley, 53 F.3d 659 (4th Cir. 1995)). In addition, this Court must consider the weight Congress attaches to the seriousness of the issue. See J & J Sports Prods., Inc. v. Olmos, No. 5:08-cv-33, 2010 WL 625283, at *2 (W.D.N.C. Feb. 19, 2010).

Employing the first method, the private investigator that entered the Establishment made three head counts to determine the number of patrons. The highest number counted was 40 patrons. However, there is difficulty in applying a precise method to determine a per-person rate for the Program. See also Joe Hand Promotions, Inc. v. Angry Ales, Inc., No. 3:06-cv-73, 2007 WL 3226451, at *5 (W.D.N.C. Nov., 2007) (awarding flat damage amount rather than a per-

6

person rate). The legal price to obtain a licensing fee would be $4,200, based on the 200 person maximum occupancy of the Establishment. (Id.) Thus, employing the approach that calculates damages based on the maximum number of patrons would allow a recovery of $4,200 under 47 U.S.C. § 605(e)(3)(c)(i)(II). However, in light of the Nalley factors, the Court finds this method awards an insufficient amount of statutory damages.

Rather than choosing the first approach, the Court elects to apply the second method, which utilizes a flat damage amount. See Buruca Brother's, 2011 WL 5873078, at *5. Courts generally apply this approach when defendants have had repeat violations over an extended period of time. See Angry Ales, 2007 WL 3226451. Including the case at bar, Plaintiff has filed four complaints against Defendants in the Western District of North Carolina in the past three years for violations of 47 U.S.C. § 605 or 553. See Waters I, 2012 WL 5930167 at, * 4; Waters II, No. 3:10-cv-00614; Waters III, No. 3:11-cv-00552.

Applying the flat damage approach, Plaintiff requests the maximum amount of $10,000 under 47 U.S.C. § 605(e)(C)(i)(II). To determine if this amount is appropriate the Court applies the Nalley factors. The first of the Nalley factors, the severity of a violation, may be shown through the commercial gain to Defendants received from the pirating of the Program. J & J Sports Prods., Inc., v. Las Chivas, Inc., No 5:10-CV-187, 2012 WL 71819, at *3. For instance, in Olmos, the establishment that displayed an illegally-intercepted cable program had a maximum capacity of 160 patrons. 2010 WL 625283, at *1. However, at the time the program was displayed, only twelve patrons were present in the establishment. Id. Regardless of the small number of patrons who viewed the program, the court still awarded statutory damages of $5,000. Id.

Here, Defendants charged an admission fee and displayed the Program on seven televisions. Also, as discussed above, 40 patrons were present in the Establishment, and the maximum occupancy was 200 persons. (Doc. No. 8). Thus, these facts clearly indicate a commercial gain, and the violation in this case is more severe than the one in the Olmos case. Therefore, the severity of the violation indicates the need to increase statutory damages.

With respect to the second and third Nalley factors, the harms and the financial burdens of the parties, Plaintiff claims losses of millions of dollars in revenue and costs related to the pirating of cable programs. Defendants did not solely cause this amount of loss but directly contributed to the cumulative detrimental impact of many instances of piracy. In addition, there are various intangible losses that cannot be accounted for, such as damage to the "good will" and "reputation" of the company. (Doc. No. 8). Even though specific amounts may be difficult to determine, it is reasonable to assume that intercepting the Program harmed Plaintiff in indirect ways. Accordingly, these factors also indicate that increased statutory damages are appropriate.

Under the fourth Nalley factor, the purpose of awarding statutory damages is to deter Plaintiff and other individuals from participating in illegally intercepting cable programs. See Waters I, 2012 WL 5930167 at, *4; Las Chivas, 2012 WL 71819, at *3. Most troubling to the Court is the fact that this is the fourth time Plaintiff has filed a complaint against these Defendants, and this is the third time Defendants have had a default judgment entered against them in the Western District of North Carolina.[1] See Waters I, 2012 WL 5930167; Waters II, No. 3:10-cv-00614; Waters III, Case No. 3:11-cv-00552. In addition, those cases involved intercepting a boxing match, which is exactly the same violation as the current case. In those

---

[1] The Court notes that there is another pending case against Defendants in which entry of default was entered in July 2011, but no motion for default judgment has been filed. (See Waters III, Case No. 3:11-cv-00552; Doc. No. 10). That case also alleged Defendants wrongfully intercepted a boxing match.

8

cases where the court entered default judgment, the court awarded damages of $10,212.50 and $15,840.50, respectively.  (See Id.)  Clearly, the previous amounts awarded in the default judgments did not deter Defendants from acting illegally.  The current case is similar to Las Chivas, because both cases involve repeat violators.  In Las Chivas, the court awarded the plaintiff $10,000, the maximum amount of statutory damages.  Las Chivas, 2012 WL 71819, at *3.  In light of this fourth factor, which recognizes that the purpose of the statue is to deter illegal activity, the Court finds that Defendants repeat violations warrant an award of high damages.

In light of the Nalley factors and other applicable law, the Court awards the maximum amount of statutory damages, $10,000, to Plaintiff.

### B. Enhanced Damages under 47 U.S.C. § 605(e)(C)(ii)

In addition to the above statutory damages, courts have the discretion to increase the damages awarded for piracy if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(C)(ii).  Here, Plaintiff pled that Defendants intercepted its Program "willfully and for purposes of direct or indirect commercial advantage or private financial gain."  (Doc. No. 1).  Plaintiff requests enhanced damages of $100,000.

First, the facts indicate that Defendants willfully intercepted the Program.  This Program could not have been mistakenly, innocently, or accidentally intercepted.  (Doc. No. 8).  Cable programs are commonly intercepted in the following methods: a "blackbox" that descrambles reception of pay-per-view broadcasts, a "smartcard" that descrambles reception of pay-per-view broadcasts, misrepresentation of a commercial establishment as residential property, an illegal cable drop or splice, or the purchase of some decryption advise.  (Doc. No. 8).  Although the

9

specific technique used in this case is unknown, these common techniques tend to show that Defendants did not accidently intercept the program.  Also, another judge in this district has already found that Defendants willfully intercepted a similar program . See Waters I, 2012 WL 5930167, at *4.  Therefore, the Court concludes Defendants "willfully" intercepted the Program under 47 U.S.C. § 605(e)(C)(ii).

Second, the violation was committed for direct or indirect commercial or private financial gain.  This generally occurs if the violation takes place in a commercial establishment rather than a residence.  See Waters I, 2012 WL 5930167 at, *4.  Here, the interception of the Program took place at McBonie's Bar and Grill, a commercial establishment.  Also, the private investigator indicated that an admission fee was charged, and there were seven televisions, all displaying the Program.  (Doc. No. 8).  It is reasonable to assume that the Program increased the amount of revenue from the sale of food and drinks.  Accordingly, these facts indicate that Defendants purposely intercepted the Program for commercial advantage.

Plaintiff request of $100,000 in enhanced damages is the maximum amount allowed under 47 U.S.C. § 605(e)(c)(ii).  Maximum damages may be awarded when the pleadings are sufficient and specific showing a defendant's "illicit profit, the number of patrons who saw the Program at Defendants' establishment, or any history of similar violations."  See J & J Sports, Inc., v. Romenski, 845 F. Supp. 2d 703, 708 (W.D.N.C. 2012) (stating maximum enhanced damages is not allowable when there is no specific and detailed investigation).  In Romenski, there was no affidavit from a private investigator detailing how the investigation was conducted and the court did not award maximum enhanced damages.  Id.  This is unlike the case at bar because the private investigator, here, signed an affidavit specifically detailing how he conducted

10

the investigation and his observations inside the Establishment.  Although the maximum amount of damages may be applied, the maximum amount is severe compared to the illicit profit likely made.  Therefore, this Court declines to award Plaintiff $100,000.

When willful violations are committed, courts do not necessarily award the maximum amount, but in many instances, have instead multiplied the statutory damages by a factor of "'three to six'" in order to calculate the amount of enhanced damages.  J.R.'Z Neighborhood Sports Grille, 2010 WL 1838432, at *2 (multiplying statutory damages by three for a willful violation without evidence of repeat violations) (quoting J & J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008)); see also J & J Sports Productions, Inc. v. Spar, 2008 WL 305038, at *2 (E.D.N.Y. Feb. 1, 2008) (awarding enhanced damages of $6,000, six times the base award against the defendant); J & J Sports Prods., Inc. v. Castro Corp., No. 11-cv-00188, 2011 WL 5244440, at *5 (D. Md. Nov. 1, 2011) (multiplying statutory damages by three where no admission fee was charged).

Specifically, courts have recognized admission fees and repeat violations as relevant factors in calculating this amount.  See J & J Sports Prods., Inc. v. RBP, Inc., No. 11-3336, 2012 WL 5947537 (D. Md. Nov. 27, 2012) (multiplying statutory damages by three with no evidence of an admission fee) (citing J & J Sports Prods., Inc., v. Quattroche, No. 09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2007)); J.R.'Z Neighborhood Sports Grille, No. 2:09-03141, 2010 WL 1838432, at *2 (citing J & J Sports Prods., Inc. v. Guzman, 553 F. Supp. 2d 195, 199 (E.D.N.Y. 2008)).  For instance, in Quattroche, the defendant charged an admission fee, and the court multiplied the statutory damages by five.  2010 WL 2302353, at *3.  In the current case, Defendants charged an admission fee.

At least one court in this district has awarded enhanced damages for repeated violations. See Las Chivas, 2012 WL 71819, at *3 (awarding an additional $5,000 due to a previous violation). As previously noted, the Court is particularly concerned by the fact that Plaintiff has filed four complaints against these Defendants in three years. See Waters I, 2012 WL 5930167; Waters II, No. 3:10-cv-00614; Waters III, Case No. 3:11-cv-00552. Again, the purpose of 47 U.S.C. § 605 is to act as a deterrent. Therefore, the damages should be significantly increased in this case to afford adequate deterrence from illegally intercepting cable programs.

Accordingly, after careful consideration of the pleadings and the record in this case, the Court multiplies statutory damages of $10,000 by five, making the enhanced damages $50,000. This amount is appropriate because of the willful nature of Defendants' violation, Defendants' apparent intent to obtain commercial or financial gain, and other significant factors, such as the admission fee and repeat violations committed by Defendants. Defendants are cautioned that further violations may result in the awarding of the statutory maximum damages.

### C. Attorney's Fees

In addition to statutory damages and enhanced damages, attorney's fees must be awarded pursuant to 47 U.S.C § 605(e)(3)(A)(iii). Plaintiff requests $1,012.50 in attorney's fees (Doc. No. 8). The sum represents 4.5 hours of work at $225 per hour. Based on applicable law and facts known to the Court, this sum is reasonable. (Id.) As such, Plaintiff is awarded $1,012.50 in attorney's fees.

### CONCLUSION

After carefully analyzing the Nalley factors, Plaintiff is entitled to the maximum amount of statutory damages of $10,000 under 47 U.S.C. § 605(e)(3)(c)(i)(II). This Court awards

enhanced damages of $50,000 due to the willful nature of the violation, the repeated violations committed by Defendants, and the interest of deterring Defendants as well as others from illegally intercepting cable broadcasts. Accordingly, Defendants are jointly and severally liable to Plaintiff for $61,012.50, which is the total of $10,000 in statutory damages, $50,000 in enhanced damages, and $1,012.50 in attorney's fees.

IT IS, THEREFORE, ORDERED that Plaintiff's Motion for Default Judgment (Doc. No. 8), is GRANTED. The Clerk's Office is respectfully directed to enter judgment in Plaintiff's favor in the amount of $61,012.50 and to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: June 14, 2013

Frank D. Whitney
Chief United States District Judge